(Lucas County Common Pleas.)
AMELIA MONDLE v. THE TOLEDO PLOW COMPANY.

---

*Adverse possession of public streets and alleys—Injunction by abutting owners—*

A plat regularly laid out with streets and alleys in 1874—fence built across the same inclosing part of it in connection with a manufactory in 1887 under agreement with the owner of two abutting lots, by which another outlet from the alley to street was furnished. In 1892 the lots sold to plaintiff, who took no action to prevent the obstruction until 1897, when the owners of the manufactory being engaged in erecting an addition encroaching upon the alley, the plaintiff commenced suit to enjoin its completion and maintenance, Held:

(1). An abutting owner upon a public street or highway in bringing an action as such to enjoin the obstruction of the highway, must rely upon his private right to sustain his action.

(2). The statute of limitations may be relied upon by a defendant as a defense in such a case, where there has been 21 years exclusive adverse possession of the premises in question.

(3). Where there had been such adverse possession for a period less than 21 years, still the right to maintain injunction might be defeated by such continued possession acquiesced in for a less time than 21 years.

(4). Where a party seeks to enjoin the erection or maintenance of a building which it is claimed to interfere with his rights, the utmost diligence and promptness is required in seeking such relief.

---

PRATT, J.

This action was brought Nov. 1, 1897, by the plaintiff, who was the owner of two lots abutting on an alley in the plat known as "Morris and Philipp's Addition". The substance of her allegations is, that the plat of such addition was laid out and the streets and alleys therein dedicated by a plat made April 8th, 1874; the alley in question lying between Alva and Tudor streets, as designated on the plat, and extending from Peru street to Lake Shore Avenue; that she purchased her lots on January 16th, 1892, having in her purchase reference to the use of the alley as a public alley; that the Plow Company having built a factory on certain lots in said addition, had built a fence across this alley for the purpose of enclosing its yard; had constructed railroad tracks across it, and at the time of the filing of her petition was engaged in the construction of an addition to its building extending into the alley, and thereby wholly cutting off access by said alley to the street known as Lake Shore Avenue; that the fence and building destroys the use and benefit of the alley which plaintiff would otherwise have, and thereby injures her property; and she prays that defendant may be enjoined from building the building and required to remove the fence.

The defendant files its answer alleging that the fence was built prior to the plaintiff's purchase of the property and by consent of plaintiff's grantor, and that this fence cut off all travel through the alley by defendant's factory, and that such part of the alley had not been open to public travel for many years.

The plaintiff's reply was a general denial of the allegations of the answer.

The case has been tried on these issues. The record of the original plat and the survey made of the property were put in evidence, and a considerable number of witnesses were examined on the part of both the plaintiff and the defendant, and the case submitted upon arguments, oral and written, with citations of authorities.

While the oral testimony is, in many respects, conflicting, upon consideration of the whole, I find the following facts as clearly appearing:

1. The plat here in question was executed in due form of law and laid out and dedicated this alley from Peru street through to Lake Shore avenue midway between Alva and Tudor streets, and was duly executed by the owners of the property on April 8th, 1874. It was laid out upon land lying outside of the city limits and at the time of the platting was an open field.

2. After the laying out of the plat, and in the fall of 1874, and during the year 1875, the original plow-works, now owned and to which the addition here in question was being built by defendants, was built by the grantors of the defendants, on certain lots of this plat fronting on Lake Shore Avenue and abutting this alley, and this factory and a portion of the lots adjoining, have since been used and operated by the original builders and intermediate owners down to this defendant, and since then to the present time by the defendant.

3. In the year 1887, or thereabouts, the then — and substantially the same as the present owners, for the protection of their property, built a fence surrounding the factory and all the lots by them owned and used in connection with the factory, enclosing the same, such fence running across the alley between Lake Shore avenue and the plaintiff's property and enclosing within the grounds of the factory all that part of the alley between the fence and said avenue, and that part of the alley and the lots in connection with the same have since remained and been used as a part of the property of defendant in connection with its works.

4. On the 16th of January, 1892, the plaintiff in this case purchased, from one William Saler, the two lots described in the petition abutting on the alley between this fence and Peru street. When Saler purchased the property does not appear, except that he did become and was the owner before and at the time this fence was built. Saler, being a carpenter, was employed by the Plow Company to build this fence; and, while doing so, when coming to the crossing of this alley, he objected to the building of the same across the alley for the reason that it would cut off and close up this alley. Thereupon an arrangement was made between Saler and a member of the Plow Company — who then owned property between that of Saler and that of the Plow Company — by which an outlet was provided for said alley out to Alva street, on which Saler's said lots fronted, and in consideration of such an outlet being provided, Saler withdrew his objection to the building of the fence across said alley and himself built the fence across the alley, for the Plow Company, where it has ever since remained, this fence being a tight board fence, and entirely cutting off the public use of said alley between the fence and Lake Shore avenue.

5. That the plaintiff knew of the existence of this fence at the time and for some three or four years before the purchase of these lots 193 and 194 from Saler, and also had full notice that while it did remain, and so long as it should remain, it wholly prevented the use, either by the public or by any owner of property abutting on said alley, of that part of the alley so enclosed within the defendant's premises, and neither the plaintiff nor the public, or any owner of property on said alley, ever did use that portion of the alley after the fence was built down to the present time, but the same has remained in the exclusive use and control of defendants and of those under whom they claim.

6. After the purchase of these lots by the plaintiff, she lived upon and occupied the same as her residence for about one year, and has not since lived upon the same, but the property has since been and still is in the possession of her tenants.

"7. In the fall of 1897 and after the 1st of October (the date not exactly appearing), the defendant company commenced building an addition to its factory—the one referred to in the pleadings—and such addition was openly in the course of construction some four or five weeks, and at the time of the commencement of this action, was very nearly if not substantially completed. It extends into this alley, at the farthest point, 11.03 feet, and is a part of a two-story brick building about forty feet square.

"8. Before the purchase by the plaintiff of her property, she caused the record of said plat to be examined, and ascertained the alley as designated and recorded upon the same, but it does not appear that she, or any one for her, made any effort to enforce its opening to the public before

the commencement of this action. . It appears that one Welker, as owner of other property abutting on the alley, did make complaint at different times, to the officers of defendant, and that by his procurements, a meeting of the township trustees was held on March 28, 1897, and an order made by the trustees directing the township clerk to notify defendant company to open the alley within three days, and such notice was served upon the officers of the company, but no action was ever taken by the trustees to enforce it, and no suit by the plaintiff or by any owner of property in reference to the closing of said alley, until this action was commenced by the plaintiff.

*Rules of law applicable to the facts as found:*

(1). There is no doubt, in my opinion, as to the right of an owner of real estate abutting on a public street or alley and who sustains special injury, not common to the public generally, from a threatened obstruction to a street or alley, to bring his action to enjoin any party about to make such obstruction and also to obtain a removal of obstructions already placed in the street or alley, unles there shall be some circumstances which should debar him from that right. Such action, however, would be one in which his own right only could be relied upon by him in order to entitle him to recover, and such action would not be one brought on behalf of the public or under which he could enforce mere public rights. The plaintiff in this case in bringing this suit, has not done so for the purpose of enforcing any public right; she is not in any sense the representative of any such right. The action is not by or upon behalf of the public, is not brought as a tax-payer or as a representative of the public in any capacity, but only by the plaintiff to enforce and protect her own special right as a property owner upon said alley.

For statements of the law upon this point any of the recognized text-writers may be consulted—for instance. sections 351, 352, 354, etc., and notes,

of volume 1, Beach on Injunctions.

Injunctions are of two kinds: preventive and mandatory. Preventive, that is, prohibiting any certain thing or things to be done; mandatory, requiring certain acts to be done. High on Injunctions, sections 1 and 2, states the peculiar characteristics of these injunctions; also Beach, section 1, and other text-writers. The general province of an injunction, as is well known, is to prevent future injury, rather than to afford redress for wrongs already committed. It is therefore generally termed a preventive rather than a remedial process, and it is unquestioned that a court will not exercise its power by way of injunction except it be at the instance of some party who has suffered actual damage, and not because of some abstract right. It is further unquestioned that the jurisdiction that shall either be direct or in its result mandatory, either by requiring certain things directly to be done or prohibiting the maintenance of certain things which have been before done, should be exercised with extreme caution, and confined strictly to cases where courts of law are unable to afford adequate redress, or where the injury cannot be compensated in damages, and that in determining whether to grant relief by way of an injunction which is either direct or in effect mandary, the court will take into consideration the relative convenience and inconvenience which would result to the parties interested from the granting or withholding of the relief. These principles are so elementary and so well established by decisions that might be cited without number, that I do not think it is necessary to sustain them further than by referring generally to the text books upon the subject.

In this case the relief asked for is, substantially, if not directly, mandatory. It is aimed against this fence, which it appears on the face of the petition and is shown by the evidence to have been erected and maintained, not only before the suit, but from a time several years prior to the plaintiff acquiring any title to or interest

in the property abutting on this alley. The allegation as to this building is that it is in the course of erection, and the fact as it appears was that, with some slight things remaining to be done, it was completed before the petition was filed. The remedy by injunction is frequently denominated "The strong arm of the law". Any plaintiff, in order to move the "arm" for his protection, must not only make a case of right at law but one in equity which commends itself to the conscience of the chancellor, and one where plaintiff has no other adequate remedy.

(2). The position here is broadly taken by plaintiff's counsel and earnestly urged, that the obstruction of an alley or other public street or way regularly laid out and dedicated to the public, is a nuisance which would have been indictable at common law, and for which any person under the statutes of this state would be criminally liable, and that therefore neither the statute of limitations nor any principle of estopple would operate as a defense as against either the public right or as against the right of any property holder interested in the street, seeking to enforce and remove any such obstruction: and numerous decisions in Ohio and elsewhere have been cited in support of this position. I am not able to concur in the position thus taken in the broad and full extent claimed. There have been many important cases, involving questions in many courts, as to the right of the public, or of parties interested, to require the removal of obstructions in public ways and streets. Applied to municipal corporations, the question as to the effect of the statute of limitations as a defense to actions requiring such removals, is discussed at large in Dillon on Municipal Corporations, sections 667 and 668, etc., and notes, and among other cases cited will there be found the earlier Ohio cases. There are also a number of later Ohio cases not cited, and among them the case in 52 Ohio St., at page 460, cited by counsel for plaintiff in this case. Bearing in mind the principle which I have already referred to

—that it is only the private right of the property holder and not the general right of the public at large, here in question, I am relieved from an examination of the cases in the Ohio supreme court by the opinion of our own circuit court as delivered by Judge King in the case of Mott v. The City of Toledo, 17 Circuit Court Reports, 472. That decision, in so far as it is applicable to this case, is, so long as it stands unreversed by the supreme court, binding upon this court.* That it is applicable to the case now under consideration, can not be questioned, and it even goes farther, as it seems to me, to meet the arguments of counsel, so far as the statute of limitations is concerned, than is required here, for the reason that there a private right of Miss Mott and of Mr. Rowland as property owners, to rely upon the statute of limitations, was sustained as against the public right of the city; while here we have under review the private right of the plaintiff as a property owner as against the private right only of the defendant as a property owner. The cases of Mott and Rowland were commenced against the city to quiet the title of certain property which had previously been dedicated to street purposes, but which they claimed by reason of adverse possession by them, and their grantors, held for more than the term of twenty-one years. The opinion is quite lengthy and reviews the entire line of decisions of our supreme court from the 8 Ohio Report—decided in 1838—down to the 52 Ohio St.—decided in 1895—the last decision of that court upon this question; and the circuit court hold, that by reason of such adverse possession, plaintiffs in those cases had acquired title to the property there in question.

(3). Under the facts of this case I find that neither the defendant here nor those under whom it claims, had any such adverse possession of this alley as excluded the public from its use until the building of this fence in the

* Since the delivery of this opinion, affirmed by supreme court.

year 1887, and consequently the statute of limitations had not run before the commencement of this action; but I do find that the building of this fence and its maintenance since that time, was such an assertion and maintenance of possession by the defendants, adverse to the rights of all persons, as wholly to exclude the public use of said alley or its use by any owner of property abutting on said alley from that time to the present, and that such use would have been sufficient, if continued for the space of twenty-one years from the building of the fence, as to have given the defendant company title by adverse possession as against any public or private right. The full period of the statute not having run, however, we must look further in order to determine the right of the plaintiff in this case, upon these pleadings and under these facts, to the relief by injunction here demanded. And in the conclusion to which I have come I think I need go no farther than to apply to the facts here found the elementary principles already stated governing the right of a party to maintain injunction for the protection of a private right.

At the time of the plaintiff's purchase from Saler, this fence was there and gave full notice to plaintiff of this obstruction of the alley and of the fact that this defendant company was then maintaining this exclusive possession of that part of the alley in connection with its factory and yard connected with such factory, and the plaintiff could not fail to know that such occupation of the alley wholly cut off this alley at the line where this fence crossed the same, and wholly prevented its use from that point to Lake Shore Avenue, either by the public or by any property owner upon the alley. She was thus, before her purchase, put upon inquiry as to the reason why and the circumstances and conditions under which this fence had been before that time constructed and this possession maintained, and it must be presumed that upon enquiry she would have ascertained the facts now shown by the evidence. It had

been constructed, as the evidence now shows, under an agreement between plaintiff's grantor and the defendants by which another outlet had been made from this alley to the street in place of the continuance of the original alley from the fence to the street beyond the factory of defendant, and these facts would certainly have estopped her grantor had he begun an action like this. For five years after her purchase—one year of which she occupied it as her residence—this fence remained and this adverse possession continued without any action being taken on her part as against the defendant's right to so maintain the same, and until the defendant company had commenced the erection of this building, and until it was nearly completed. The building itself cut off no access that had been at any time available to her grantor from the building of the fence, or to the plaintiff from the time of her purchase down to the time of the erection of this building, and to stop the erection of this addition to the building, or to cause it to be destroyed, could not avail her anything so long as this fence remained. Its erection made no change in the possession held by the defendants except in so far as it made more permanent the occupation by defendants and would enhance the damage which would accrue to defendants in case they should be required to remove all obstructions upon the alley. The construction of the building, however, was not sought to be done in any way or manner that would have precluded plaintiff from taking action to prevent the building being erected immediately upon the erection being commenced. It is not like a case where a party, apprehending that an effort would be made to enjoin the doing of a certain work, commenced it upon Sunday, or at some other time when process to prevent it could not be obtained, and where the process is promptly obtained at the earliest moment possible. In such a case the defendant may be required by order of the court not only to discontinue the work, but to remove that which he has already accomplished;

but the utmost diligence and promptness is required on the part of the party seeking such relief. No such case is here made.

But, without further discussion, and not intending to determine whether the plaintiff in this case can maintain an action at law for damages sustained to her property; whether Welker, or any other property owner, has any right of action against the defendant company, either in damages or otherwise, or whether any representative of the public interests could maintain any action whatever in the matter, I am of the opinion and so decide, that the plaintiff here has not, by reason of any right which she has shown, made a case entitling her to any injunction, either preventive or mandatory, and therefore this petition will be dismissed.

F. M. Sala, for Plaintiff.

E. W. Tolerton, for Defendant.